**DE KALB TRUST & SAVINGS BANK,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

**No. 12168.**

United States Court of Appeals
Seventh Circuit.

March 3, 1958.

Joseph Stein, Edgar H. Stenn, Chicago, Ill., for appellant.

Charles K. Rice, Asst. Atty. Gen., Sheldon I. Fink, Attorney, Tax Division, U. S. Department of Justice, Washington, D. C., Robert Tieken, U. S. Atty., Chicago, Ill., Lee A. Jackson, David O. Walter, Attorneys, Department of Justice, Washington, D. C., Donald Lowitz, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before HASTINGS and PARKINSON, Circuit Judges, and WHAM, District Judge.

HASTINGS, Circuit Judge.

This is an appeal from a judgment of the district court denying recovery of $7937.43 income tax alleged to have been erroneously assessed against the taxpayer for the year 1946. The facts were stipulated and included in the court's findings, and the errors relied upon arise out of conclusions of law based thereon.

Taxpayer[1] is a banking corporation carrying on a general banking business in DeKalb, Illinois. By reason of economic conditions, on March 3, 1933, agreements were entered into between

---

1. DeKalb Trust & Savings Bank, plaintiff-appellant.

taxpayer and its depositors whereby 60 per cent of the amount of the deposits was transferred and assigned to taxpayer; each depositor waived all rights thereto, and agreed to accept, in lieu thereof, a deferred certificate issued by taxpayer for like amounts, payable solely out of the future profits of the taxpayer bank and before any dividends were to be paid to taxpayer's stockholders. The amount so transferred to taxpayer by its depositors was $206,818.27.

The certificate incorporated the agreement and provided for said sums to be payable from time to time on a pro rata basis on such dates and in such manner as taxpayer should determine, and that "no lien or preference of any kind exists against any of the assets of the bank in favor of the holder of this certificate and that payments hereon shall be made from time to time in such amount as shall be directed by the Auditor of Public Accounts in his sole discretion."

Payments were made to the depositors by taxpayer in 1936 and from 1939 through 1945. At the end of 1945, there remained a balance due to the depositors of $62,029.68. As of January 1, 1946, taxpayer had on hand undistributed earnings from prior years of $15,928 available for payment to certificate holders, and on February 15, 1946, under proper state authority, it paid the entire balance of $62,029.68 owing to them. Taxpayer earned $11,205.42 during the period from January 1, 1946 to February 15, 1946, and paid the balance from other assets on hand at the time of such payment. Other payments had been made by taxpayer to certificate holders from time to time from assets other than earnings.

Taxpayer had incurred net losses in its operations during each of four years and had earned net profits and made recoveries during each of the other years in the period from 1933 through 1945. No federal income tax was paid on earnings during that period, taxpayer claiming immunity and the government not disputing such claim. For the calendar year ending December 31, 1946, taxpayer's taxable earnings were $57,113.36, and against this income taxes of $19,285 were assessed and collected by the government. Taxpayer filed a timely claim for partial refund asserting that taxes had been erroneously assessed and collected on a portion of its 1946 earnings which were exempt or immune.

This case turns on the applicability of Section 3798(b) of the Internal Revenue Code of 1939,[2] 27 U.S.C.A., now Section 7507 of the 1954 Code, 26 U.S.C.A. The contested issues are whether this statute was intended by Congress for the benefit of banks as well as depositors who had waived claims; whether these depositors were given a lien upon subsequent earnings of the taxpayer bank in lieu of their waived deposits, as required under the statute; and whether the assessment and collection of income taxes from taxpayer for 1946 diminished assets of the taxpayer bank available and necessary for payment of depositors' claims for waived deposits.

Since Section 3798 is an exemption statute it must be strictly construed in favor of the government, its purpose being to protect the depositors from competing claims of the United States for taxes. New Jersey Title Guarantee & Trust Co. v. Commissioner,

2. § 3798. Exemption of insolvent banks from tax. * * *
"(b) Whenever any bank or trust company, a substantial portion of the business of which consists of receiving deposits and making loans and discounts, has been released or discharged from its liability to its depositors for any part of their claims against it, and such depositors have accepted, in lieu thereof, a lien upon subsequent earnings of such bank or trust company, or claims against

assets segregated by such bank or trust company or against assets transferred from it to an individual, or corporate trustee or agent, no tax shall be assessed or collected, or paid into the Treasury of the United States on account of such bank, or trust company, such individual or corporate trustee or such agent, which shall diminish the assets thereof which are available for the payment of such depositor claims and which are necessary for the full payment thereof."

2 Cir., 1950, 183 F.2d 169, 171. It is manifestly "one of beneficent policy toward the depositors of insolvent banks rather than one of exemptive favor to the banks themselves." Farmers & Merchants Bank, Ceresco, Nebraska v. Commissioner, 8 Cir., 1949, 175 F.2d 846, 850. "The purpose of the Act is to relieve the depositors from the payment of taxes not assessed upon them, but not to relieve the owners of the bank." Kavanagh v. First Nat. Bank of Wyandotte, 6 Cir., 1943, 139 F.2d 309, 311. Taxpayer has cited no authority to the contrary and we know of none.

Section 3798 requires that, for it to be operative, the depositors must have accepted, in lieu of their claims, "a lien upon subsequent earnings of such bank * * *," as well as the requirement that the tax "shall diminish the assets thereof which are available for the payment of such depositor claims and which are necessary for the full payment thereof."

It should be noted that the depositor's certificate itself expressly provides: "It is understood and agreed that *no lien or preference of any kind exists against any of the assets of the bank in favor of the holder of this certificate * * *."* (Our emphasis.) Taxpayer relies on Farmers & Merchants Bank, Ceresco, Nebraska v. Commissioner, supra, in support of its contention that the agreement and certificate gave the former depositors an equitable lien upon subsequent earnings of the bank. In that case, however, there was no specific provision that "no lien or preference of any kind" existed in favor of the depositors and the court there found that the parties intended to create an equitable lien. Here, their agreement shows they intended the opposite. Similarly, Clin-

ton Trust Co. v. United States, 1943, 52 F.Supp. 671, 100 Ct.Cl. 348, can be readily distinguished on the same ground.

Furthermore, we fail to see the validity in taxpayer's contention that the collection of taxes for 1946 diminished its assets available and *necessary* for the full payment of the balance due on the certificates. At the end of 1945 taxpayer had ample assets to pay off these claims and so represented to the state, on January 29, 1946, in requesting permission for the payment. It stated that it had an undivided profits account of $111,660.98, and on December 31, 1945, its surplus was $119,179.31. Further, at the end of 1946, after payment to the former depositors, its surplus was $146,010.87. Thus, it appears conclusively that if the disputed taxes had not been assessed and paid they would not have gone to the former depositors.

As the court said in Clinton, supra, 52 F.Supp. at pages 679–680: "The statute does not permanently forswear the collection of taxes for the benefit of depositors of an insolvent bank. It only defers their collection to the extent to which the tax money goes to pay the depositors. The bank and its owners are not intended to gain or the Government *to lose taxes as a result of the applica-*tion of the statute. * * * The taxes are therefore collectible, and collectible immediately, out of any part of the earnings of the bank which, if not paid out for taxes, *would still not be paid to the depositors.*" (Our emphasis.)

■ We hold, therefore, that the district court did not err in stating its conclusions of law unfavorable to the taxpayer, and the judgment below is

Affirmed.